```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                  :
UNITED STATES OLYMPIC
 COMMITTEE                        :

     v.                           :    Civil Action No. DKC 2008-0496
                                  :
OLYMPIC SUPPLY, INC., ET AL.
                                  :
```

**MEMORANDUM OPINION**

The facts and procedural history of this case are set forth in detail in the Memorandum Opinion issued by this court on May 26, 2009. (Paper 24). For the reasons previously explained, the court issued an opinion granting in part Plaintiff's motion for summary judgment. Thereafter, the parties reached an agreement regarding the nature and scope of appropriate injunctive relief, determining that Defendant would be permanently enjoined from using the word "Olympic" as part of its retail business. The parties, however, continue to disagree as to the effective date of the injunction. Pursuant to the court's instructions following a June 12, 2009 telephone conference, Plaintiff and Defendant have provided statements outlining their positions regarding the effective date of an injunction against Defendant.

Defendant requests that the court allow a one-year grace period before the injunction becomes effective. (Paper 31). Specifically, Defendant insists that an injunction requiring it to change its tradename without sufficient time to absorb the related costs, which Defendant estimates at approximately $100,000, will

place an undue financial burden on its business operations. (*Id.* at 2). Plaintiff countered that the injunction should take effect on July 29, 2009, because Defendant neither asserts that it would be impossible to make any necessary changes more quickly nor explains why the cost of such changes would be crippling to its business. (Paper 32, at 2). Plaintiff insists not only that it warned Defendant nearly three years ago of Defendant's infringement, but also that it informed Defendant in late 2007 that it would request an immediate injunction with no transition period.

It is axiomatic that an injunction for trademark infringement should balance the rights of the parties. 5 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 30.3 (4th ed. 2008). In balancing these equities, the court has broad discretion to delay the effective date of an injunction in order to permit an infringer to change its tradename or to use an existing supply of goods that contain the infringing mark. *Id; The George Basch Co., Inc. v. Blue Coral Inc.*, 968 F.2d 1532 (2$^{d}$ Cir. 1992). For example, in *Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity*, 659 F.Supp. 117, 118 (D.N.H. 1987), the plaintiff, a national fraternity, brought an action for trademark infringement against the defendant, a former local chapter, to enjoin the defendant from using a tradename similar to the national group. Although the court ultimately granted the injunction, it delayed the effective date of the injunction for three months in order for the defendant

to effectuate fully its name change. *Id.* at 118. Reasoning that the defendant had to change its name in all literature, publications, and directories in which it used the infringing tradename, the court concluded that it was "reasonable" to permit a grace period before the injunction took effect.

Similarly, in *Lance Mfg., LLC v. Voortman Cookies, Ltd.*, 617 F.Supp.2d 424 (W.D.N.C. 2009), the court afforded the defendant, a cookie distributor, to have a limited transition period before an injunction prohibiting the defendant from using the plaintiff's cookie packaging became effective. In reaching its decision, the court considered the financial burden that the defendant would incur if it had to remove immediately all infringing packages, estimated by the defendant at $120,000, as well as the relatively short shelf life of the cookies – 100 days. *Id.* at 434. Additionally, the court reasoned that allowing the defendant to sell off its available supply of goods avoided "the wastefulness of extensive relabeling or [the] trashing [of an] existing stock bearing an infringing mark." *Id.* (citing 5 McCarthy § 30.3).

In fact, courts have denied such grace periods only when the defendant willfully infringes on the plaintiff's trademark in a "particularly bold" manner. 4 Louis Altman & Malla Pollack, Callman on Unfair Competition, Trademarks & Monopolies § 23.75 (4th ed.); *see also Berkshire Fashions, Inc. v. Sara Lee Corp.*, 725 F.Supp. 790 (S.D.N.Y. 1990)(denying defendant's request for a grace

3

period where the defendant invested in infringing packaging *after* the Trademark Trial and Appeal Board had ruled against it).

In the present case, a transition period is appropriate to balance the equities of Plaintiff and Defendant. Although Plaintiff alleges that Defendant willfully infringed its trademark, other considerations may make a transition period appropriate. *See Attrezzi LLC v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006)(granting defendant a twelve-month sell-off period for its existing stock of infringing goods despite the jury's finding that defendant's infringement was willful.). Additionally, Defendant asserts that it will suffer a significant financial burden if it must immediately absorb all costs associated with changing its tradename. To avoid placing such a burden on Defendant, and to permit Defendant to dispose of its existing infringing inventory in a non-wasteful manner, a transition period is appropriate.

In this case, although Defendant requests a twelve-month transition period, a transition period of approximately six months from the date when the parties agreed to permanent injunctive relief more appropriately balances the rights of both parties. First, a six-month grace period gives Defendant time to use the infringing inventory it has in stock, as Defendant currently has a six-month supply of merchandise bags containing the infringing mark. In addition, as noted in *Lance Mfg.*, 617 F.Supp.2d at 434, a six-month grace period allows Defendant to spread the costs of

4

changing its tradename – on literature, uniforms, merchandise bags, and signage – over time.  Simultaneously, narrowing the transition period from one year to six months protects Plaintiff's rights by limiting the period in which Plaintiff's trademark continues to be infringed.  Given that the next Winter Olympic Games begin in mid-February 2010, a limited transition period also serves the public interest.  *See Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 423 (4th Cir. 1998)(noting the importance of protecting the public interest in infringement cases).

Accordingly, the court will issue an injunction permanently enjoining Defendant from using the word "Olympic" or any simulation thereof in its retail business, but will allow a transition period until January 11, 2010, before the injunction takes effect.  A separate Order will follow.

                                        /s/
                                   DEBORAH K. CHASANOW
                                   United States District Judge